TurNEY, J.,
dissented, and said:
I can not concur with the majority of the Court in the opinion granting the divorce in this case.
My observation has been that at every Chancery and Circuit Court attended by me for a number of years, and up to within the last twelve months, from one to a half dozen, and sometimes more, suits for divorce were pending, with the mania for their institution and prosecution on the increase — all attributable alone to the loose and unnatural legislation of the State. A similar condition of things exists in most of the other States of the Union, making the name' of the North American people almost, if not in fact, a by-word.
I agree with Mr. Shelford, that “the general advantages of indissolubility, as opposed to an unlimited right of divorce, are elegantly and clearly demonstrated *466 by Hume, in his Essay on Polygamy and Divorces, -where he observes, If it be true on the one hand that the heart of man naturally delights in liberty, and hates everything to which it is confined, it is also true on the other, that the heart of man naturally submits to necessity, and soon loses an inclination when there appears an absolute impossibility of gratifying it. Perhaps it will be said that these principles of human nature are contradictory; but what is man but a heap of contradictions? Though it is remarkable that where principles are, after this manner, contrary in their operation, they do not always destroy each other, but the one or the other may predominate on any particular occasion, according as circumstances are more or less favorable to it. For instance, love is a restless and impatient passion, full of caprices and variations, arising in a moment from a feature, from an air, from nothing, and suddenly extinguishing after the same manner. But friendship is a calm and sedate affection, conducted by reason and cemented by habit, springing from long acquaintance and mutual obligations, without jealousies, and without those feverish fits of heat and cold which cause such an agreeable torment in the amorous passion. So sober an affection, therefore, as friendship rather thrives under constraint, and never rises to such a height as when any strong interest or necessity binds two persons together and gives them some common object of pursuit. We need not, therefore, be afraid of drawing the marriage knot, which chiefly subsists by friendship, the closest possible. The amity between the persons, where it is solid *467 and sincere, will ratber gain by it; and where it is wavering and uncertain, this is the best expedient for fixing it. How many frivolous quarrels and disgusts are there, which people of common prudence endeavor to forget when they lie under the necessity of passing their lives together, but which would soon be flamed into the. most deadly hatred were they pursued to the utmost under the prospect of an easy separation.
“We must consider that nothing is more dangerous than to unite two persons so closely in all their interests and concerns as man and wife, without rendering the union entire and total.
“The least possibility of a separate interest must be the source of endless quarrels and suspicions. The wife, not secure of her establishment, will still be driving some separate end or profit; and the husband’s selfishness, being accompanied with more power, may still be more dangerous.”
I will add to the argument, favoring “drawing the marriage knot closest possible.”
There can not be a doubt that our loose legislation upon the subject and still looser administration of the law of divorce, have cursed the State with crime and misery, in bringing about thoughtless and hasty marriages, a large proportion of the unfortunates taking upon themselves their marriage vows and obligations the more readily and carelessly, because of the slip-shod provisions of the statute and their rickety administration. It can be very well seen how one of low instincts or of morals not the best — classes not to be overlooked by the Legislature and Judiciary — would *468 secure him or herself in the reflection, on the eve of an engagement or even marriage, that the law of divorce is easy, with many causes provided for its ob-tention and they of a character quick of improvisation, so if I am not satisfied with a probationary wedding life, I will appeal to the Courts and through them dissolve my experimental union.
On the other hand, if it is understood that marriage is not to be treated so lightly, but that it is the most solemn and binding of all contracts, and when once consummated is dissoluble for but the one cause, we will find male and female not only more cautious, thoughtful and honorable in their affiances and marriages, but much of other crime will fail to publish itself through the Courts, because it shall have passed away. To borrow from Lord Stowell: “When people understand that they must live together except for a very few reasons known to the law, they learn to soften by mutual accommodation that yoke which they know they can not shake off; they become good husbands and good wives from -the necessity of remaining husbands and wives, for necessity is a powerful master in teaching the duty it imposes. If it were once understood that upon mutual disgust married people might be legally separated, many couples who now pass through the world with mutual comfort, with attention to their common offspring and to the moral order of civil society, might have been at this moment living in a state of mutual unkindness, in a state of estrangement from their common offspring, and in a state of the most licentious and unreserved immorality.”
*469 Of this last picture drawn by the learned Judge, there are but few members of the bar, with experience in the practice, who can not call to their recollections exact representatives.
Statutory innovation upon the solemnity and binding effect of the marriage relation has been of slow growth and of great popular disfavor until within a comparatively recent period in the history oí law.
Blackstone, bk. 1, p. 440-1, says, “in cases of total divorce the marriage is declared null as having been absolutely unlawful ab initio, and the parties are therefore separated pro salute animanm, for which reason no divorce can be obtained but during the life of the parties.
“The issue of such marriage as is thus entirely dissolved are bastards.
“Divorce a mensa et thoro is when the marriage is just and lawful ab initio, and therefore the law is tender of dissolving it, but for supervenient cause it becomes improper or impossible for the parties to live together as in case of intolerable ill temper or adultery in either ' of the parties.
“For the canon law, which the common law follows in this case, deems so highly and with such mysterious reverence of the nuptial tie, that it will not allow it to be unloosed for any cause whatever that arises after the union is made.
“And this is said to be built on the divine revealed law, though that expressly assigns incontinence as a cause, and indeed the only cause why a man may put away his wife and marry another. * * *
*470 “With us, in England, adultery is only a cause of separation from bed and board, for which the best reason that can be given is, that, if divorces were allowed to depend upon a matter within the power of either of the parties, they would probably be extremely frequent.
“Homan philosophers, poets and satirists, held up to public scorn and indignation the wanton and extreme abuse of the liberty of divorce.”
Chancellor Kent, who has just passed from our immediate midst, says: “We meet with a great variety of practice and opinion on this subject, in this country and in Europe, and among the ancient and modern nations, but the stronger authority and the better policy are in favor of the marriage union.”
Every lawyer in the land has been taught not only that the Bible is law, but that it is the source of law. It is found in every complete law library as part thereof, and the standard work therein.
Upon the table of every official in the State, authorized or required to administer oaths, it is found. By the law, the most honorable and honored is not permitted to testify for or against the most humble or most unworthy, except he appeal to God as witness to the truth of his testimony — this appeal being made to the rewarder of truth and avenger of falsehood, as he is known through the recognized truth and authorship of the Bible.
The officers of all the Courts, the members of the bar, in short, every officer in the land from lowest to highest, is required to take an oath upon the faith of *471 bis belief in the truth of the Scriptures to faithfully discharge the duties of his office.
The law discredits the infidel. All these things are so because the Bible is the supreme law, looking to the reward or punishment of its observers or violaters beyond the capacity and ingenuity of man to contrive or establish. Thus we acknowledge it as the foundation of all law, which must be consistent with and conform to it, otherwise it is no law.
Unless this is so, the swearing of witnesses and others on the Bible or upon the faith of their belief in its truth, is solemn mockery, and it would be far more consistent to swear them on the Code or some standard criminal law book, defining the offense and punishment of perjury.
In this authority, from which every well defined right of person and property is derived, we find — Matthew, ch. 19, verses 3 to 10 inclusive — the law of divorcej stated in these words, by our Saviour:
“The Pharisees also came unto him, tempting him and saying unto him, Is it lawful for a man to put away his wife for every cause?
“And he answered and said unto them, Have ye not read, that he which made them at the beginning made them male and female,
“And said, for this cause shall a man leave father and mother and cleave to his wife; and they twain shall be one flesh.
“Wherefore, they are no more twain but one flesh; what therefore God hath joined together, let no man put asunder.
*472 “They say unto him, Why did Moses then command to give a writing of divorcement and to put her away?
“He saith unto them, Moses, because of the hardness of your hearts, suffered you to put away your wives; but from the beginning it was not so.
“ And I say unto you, whosoever shall put away his wife, except it be for fornication, and shall marry another, committeth adultery, and whoso marrieth her which is put away, doth commit adultery.”
Now I must elect between a statutory regulation demoralizing in its every influence and tendency, encouraging a system of kin to free-loveism, and an express divine law. ‘I do not hesitate to disregard the one and observe the other, adopting the language of Blackstone, book 1, p. 42, as expressive of my conviction of the obligation of law.
“Upon these two foundations, the law of nature and the law of revelation, depend all human laws — that is to say, no human laws should be suffered to contradict these. There are, it is true, a great number of indifferent points in which both the divine law and the natural law leave a man at his own liberty, but which are found necessary for the benefit of society to be restrained within certain limits.
“And herein it is that human laws have their greatest force and efficiency; for with regard to such points as are not indifferent, human laws are only declaratory of and act in subordination to the former.
“To instance in the case of murder, this is expressly forbidden by the divine and demonstrably by the nat *473 ural law, and from these prohibitions arises the true unlawfulness of this crime. Those human laws that annex a punishment to it, do not at all increase its moral guilt or superadd any fresh obligation in foro consoientice to abstain from its perpetration. Nay, if the human law should allow or enjoin ns to commit it, ioe are bound to transgress that human law, or else we must offend both the natural and divine.
“But with regard to matters that are indifferent in themselves and are not commanded or forbidden by these superior laws, such for instance as exporting wool into foreign countries, here the inferior legislature has scope and opportunity to interpose and to make that action unlawful which before was not.”
Entertaining these views, I think the bill ought to be dismissed.